UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MATTHEW G. WEISS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 4:09 CV 869 CDP |
| | ) | |
| MICHAEL J. ASTRUE | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision denying Matthew G. Weiss's application for disability insurance benefits under Title II of the Social Security Act (Act), 42 U.S.C. §§ 401, *et seq*., and supplemental security income benefits under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq*.

Weiss claims he is disabled because he suffers from schizoaffective disorder of a paranoid type with major depression disorder with psychotic features. The Administrative Law Judge, however, concluded that Weiss was not disabled. Weiss appeals the decision denying him disability benefits. Because the Administrative Law Judge (ALJ) did not give adequate weight to Weiss's treating physician's medical opinion or state a proper reason for discounting that opinion, I will reverse the ALJ's decision and remand to the Commissioner for further consideration.

## Procedural History

On May 8, 2007, Weiss filed applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Act. Weiss alleges that his

disability began on May 2, 2006, due to schizoaffective disorder and major depression disorder with psychotic features. The Social Security Administration initially denied his application on July 10, 2007, and Weiss filed a timely request for a hearing by an ALJ. The ALJ issued an opinion upholding the denial of benefits. The Social Security Administration Appeals Council denied Weiss's request for further review on May 12, 2009. Thus, the decision of the ALJ stands as the final determination of the Commissioner.

### Testimony Before the ALJ

At the time of the administrative hearing Weiss was twenty-nine years old and lived with his two parents. He had completed the twelfth grade and had spent about a year in college.

Weiss testified that he suffered from schizophrenia and depression. He stated that the schizophrenia causes him to hear voices daily, and that the frequency and intensity of those voices increases corresponding to his level of stress. Weiss claims the voices have made him paranoid, and have caused him to think that people are out to "get him." Weiss testified that he believed co-workers were going to harm him physically, and that his friends had placed listening devices in his home.

Weiss said that the depression has caused him to have no self-esteem, leaving him with a feeling that everyone around him is looking down on him. The depression has also caused Weiss to have little motivation to do much of anything and has left him with a lack of drive in life.

Weiss testified that he began hearing voices when he was nineteen, but it only began seriously affecting his life around the age of 26, or in 2005. Weiss began treatment for these symptoms in 2005 and continues to see his primary physician about once every two months and takes the medications he prescribes. Weiss's prescribed medications have caused him to gain

weight and need more sleep, but they have been and continue to be helpful at controlling his symptoms.

Weiss said his average day begins when he wakes up at 10:00 AM. After waking up Weiss takes his medication and then will either play video games, visit his brother's house, or go bowling. He also goes fishing three to four times per week, and is able to drive by himself everywhere he goes. It is unclear what Weiss does with the rest of his day, though he claims he watches a lot of television and is usually in bed by eleven or twelve.

Weiss testified that he has been unemployed for two and a half to three years, but prior to that he had worked for a series of different employers. Weiss worked for his uncle at Air Clean Specialists for three years. At Air Clean Specialists, Weiss would travel the states of Missouri and Illinois changing out "smoke eaters." Weiss claims to have quit this job because of the schizophrenia. Before working for his uncle Weiss worked for Lami Wood Products as a cabinet builder. Weiss also worked at True Manufacturing as an assembly line worker.

Weiss has no physical problems, but claims the culmination of the effects of the schizoaffective disorder and depression have left him unable to work with co-workers or supervisors because of his paranoid state of mind.

## Medical Records

On August 18, 2005, Weiss entered the emergency room of St. Joseph Health Center in St. Charles, Missouri. Weiss complained of hearing voices and having paranoid and suicidal thoughts. Weiss was admitted to the hospital under the care of John P. Canale M.D., who to this day has remained his primary psychiatrist. Dr. Canale believed Weiss was suffering from major depressive disorder with psychotic symptoms and possibly schizoafective disorder. During

Weiss's initial stay he admitted to a history of using crack cocaine and methamphetamine, and continuing use of alcohol and marijuana. Dr. Canale prescribed Risperdal and Lexapro. At Weiss's discharge Dr. Canale gave Weiss a Global Assessment of Functioning (GAF) score of 55.

Later in August after he was discharged, Weiss met with Dr. Canale and complained that the auditory hallucinations (voices) were continuing. Dr. Canale increased the dosage of Risperdal and Lexapro. A couple of days later on August 31, 2005, Weiss's father expressed his concern to Dr. Canale that Weiss believed his house and truck were bugged and that his friends were trying to kill him. Dr. Canale changed Weiss's prescription by adding Zyprexa and discontinuing Risperdal.

Eight months later, on March 22, 2006, Weiss informed Dr. Canale that he was feeling good, and suffered only from occasional auditory hallucinations.

On May 5, 2006, Weiss was admitted to Bridgeway Counseling Services to address the issue of his alcohol and drug use. When admitted Weiss had a GAF score of 45. Weiss was discharged from the rehabilitation clinic on May 24, 2006.

A couple weeks later Weiss met with Dr. Canale and reported continued auditory hallucinations. He claimed he had not drunk any alcohol since he completed rehabilitation, although he admitted to continued marijuana use. In his notes Dr. Canale wrote that Weiss was "not able to work," and increased the dosage of Zyprexa and continued Lexapro.

Weiss again met with Dr. Canale on June 5, 2006. At this meeting Weiss complained of continued auditory hallucinations, and although he denied any alcohol use, he continued to use marijuana. Again in his notes Dr. Canale wrote "not able to work," and he continued the same

dosage of Lexapro and increased the dosage of Zyprexa. The following month Weiss met with

Dr. Canale and again admitted to marijuana use and continued auditory hallucinations. In his

notes Dr. Canale wrote that Weiss was "not able to work." Dr. Canale discontinued Geoden, but

continued both Lexapro and Zyprexa.

On August 23, 2006, Dr. Canale met with Weiss and his parents. Dr. Canale noted that

Weiss continued to have auditory hallucinations, but marked nothing in his notes regarding any

alcohol or marijuana use. Dr. Canale discontinued Geodon, but continued Risperdal and

Lexapro.

On December 15, 2006, Weiss met with Dr. Canale. Dr. Canale's notes state that Weiss

had decreased psychotic symptoms, and that Weiss had begun consuming alcohol again. At this

point Dr. Canale continued Resperdal and Lexapro.

On March 27 of the following year Dr. Canale met with Weiss and Weiss expressed his

concern that he was feeling more depressed and had been experiencing an overall lack of interest

and motivation. Dr. Canale also noted that Weiss's alcohol use continued, but there is no

mention of his marijuana use. Dr. Canale continued to prescribe Weiss Risperdal, started him on

Wellbutrin, but discontinued Lexapro.

On June 22, 2007, the Missouri Department of Elementary and Secondary Education,

Section of Disability Determinations referred Weiss to Dr. Lipsitz for a psychological

consultation. Dr. Lipsitz noted that Weiss "is a pleasant appearing 28-year-old white single male

who appears in some acute distress." Dr. Liptsitz observed that Weiss had a constant tremor with

his legs, which Dr. Lipsitz thought to be a manifestation of Weiss's agitation. Dr. Lipsitz

believed that Weiss suffered from some "active psychotic functioning with auditory

hallucinations" but denied any "full blown delusional thought processes."  Dr. Lipsitz also noted

that Weiss appeared to be within the average range for intellectual functioning and that Weiss

had good concentration, insight, and judgment. Dr. Lipsitz diagnosed Weiss with schizoaffective

disorder, and depression.  Dr. Lipsitz's prognosis was that Weiss needed ongoing psychiatric

treatment , medication and individual psychotherapy. He stated, "Hopefully medication could

help alleviate the mood and thought process disturbance so that he could again assert himself and

make a better adjustment to his environment."  Dr. Lipsitz also commented that Weiss had

marked difficulties in maintaining social functioning with mild to moderate difficulties in

concentration.  Dr. Lipsitz gave Weiss a GAF score of 55.

On August 22, 2007, Weiss and his parents met with Dr. Canale.  Dr. Canale's notes

mention that Weiss was still not working but was planning to apply for disability.  Weiss

reported to Dr. Canale that he had joined a bowling league, and that he continued to use alcohol.

Dr. Canale continued Risperdal and added Desyrel.

On October 14, 2008, Dr. Canale completed a Mental Residual Functional Capacity

Questionnaire wherein Dr. Canale manifested his belief that Weiss would be unable to work even

an unskilled job.  Dr. Canale believed that Weiss was unable to meet competitive standards in a

majority of work related areas and that his delusions and impaired ability to concentrate prevent

him from being able to enter the work force.  In the questionnaire Dr. Canale wrote that Weiss

"cannot function in a normal work environment" and that he believes Weiss would miss more

than four days of work a month due to his impairments and treatment.

Later, on September 9, 2008, Dr. Canale modified Weiss's prescription by discontinuing

Wellbutrin, and continuing Desyrel, Risperdal, Zoloft.

## Legal Standard

A court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001). Substantial evidence is less than a preponderance, but is enough so that a reasonable mind would find it adequate to support the ALJ's conclusion. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). As long as there is substantial evidence on the record as a whole to support the ALJ's decision, a court may not reverse it because substantial evidence exists in the record that could have supported a contrary outcome. *Id.* Nor may a court reverse the ALJ's decision because it would have decided the case differently. *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992). In determining whether existing evidence is substantial a court considers "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000) (quoting *Warbuton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999)).

To determine whether the decision is supported by substantial evidence, the Court is required to review the administrative record as a whole to consider:

(1) the credibility findings made by the Administrative Law Judge;

(2) the education, background, work history, and age of the claimant;

(3) the medical evidence from treating and consulting physicians;

(4) the plaintiff's subjective complaints relating to exertional and non-exertional impairments;

(5) any corroboration by third parties of the plaintiff's impairments; and

(6) the testimony of vocational experts when required which is based upon a proper hypothetical question.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare,* 623 F.2d 523, 527 (8th Cir. 1980).

Disability is defined in the social security regulations as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. § 42 U.S.C. 416(i)(1); § 42 U.S.C. 1382c(a)(3)(A); § 20 C.F.R. 404.1505(a); § 20 C.F.R. 416.905(a). In determining whether a claimant is disabled, the Commissioner must evaluate the claim using a five-step procedure.

First, the Commissioner must decide if the claimant is engaging in any substantial gainful activity. If the claimant is engaging in substantial gainful activity, he is not disabled.

Next, the Commissioner determines if the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to do basic work activities. If the claimant's impairment is not severe, he is not disabled.

If the claimant has a severe impairment, the Commissioner evaluates whether the impairment meets or exceeds a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment satisfies a listing in Appendix 1, the Commissioner will find the claimant disabled.

If the Commissioner cannot make a decision based on the claimant's current work activity or medical facts alone, and the claimant has a severe impairment, the Commissioner reviews whether the claimant can perform his past relevant work. If the claimant can perform his past relevant work, he is not disabled.

If the claimant cannot perform his past relevant work the Commissioner must evaluate whether the claimant can perform other work in the national economy. If not, the Commissioner

declares the claimant disabled. § 20 C.F.R. 404.1520; § 20 C.F.R. 416.920.

When evaluating evidence of pain or other subjective complaints of the plaintiff, the ALJ is never free to ignore the subjective testimony of the plaintiff, even if it is uncorroborated by objective medical evidence. *Basinger v. Heckler,* 725 F.2d 1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. *See*, *e.g., Battles v. Sullivan*, 902 F.2d 657, 660 (8th Cir. 1990). In considering subjective complaints, the ALJ is required to consider the factors set out by *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), which include:

> claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the objective medical evidence; (2) the subjective evidence of the duration, frequency and intensity of plaintiff's pain; (3) any precipitating or aggravating factors; (4) the claimant's daily activities; (5) the dosage, effectiveness and side effects of any medication; and (6) the claimant's functional restrictions.

*Id.* at 1322.

### The ALJ's Findings

The ALJ found that Weiss was not disabled considering his age, education, work experience and residual functioning capacity. He issued the following specific findings:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2.  The claimant has not engaged in substantial gainful activity since May 2, 2006, the alleged onset date. (20 C.F.R. §§ 404.1521 *et seq.,* and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: a schizoaffective disorder and polysubstance abuse. (20 C.F.R. §§ 404.1521 *et seq.,* and 416.921 *et seq.*).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525, 404.1526, 416.925, and 416.926).

5. After careful consideration of the entire record the ALJ found that the claimant had the residual functional capacity to perform a full range of unskilled work at all exertional levels that does not involve more than incidental contact with the general public, co-workers, or supervisors.

6. The claimant is capable of performing his past relevant work performing factory product assembly work. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. §§ 404.1565, 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from May 2, 2006, through the date of February 25, 2009.

8. The claimant's substance abuse is not a factor material to finding that he is disabled because he is not disabled.

The ALJ concluded that the medical evidence in the record did not support a finding of disability, and that neither Dr. Canale's medical opinion nor Weiss's subjective opinion deserved significant weight, because he perceived inconsistencies between Dr. Canale's opinion, Weiss's testimony, and the record.

## Discussion

As previously mentioned, when reviewing a denial of Social Security benefits, a court must determine whether there is substantial evidence on the record as a whole to support the ALJ's decision. 42 U.S.C. § 405(g). In this case, Weiss asserts four main arguments for why the ALJ's decision denying benefits should be remanded or reversed. First, Weiss argues that the certified administrative transcript does not contain an accurate copy of the transcript from the ALJ hearing. Second, Weiss argues that the ALJ improperly evaluated his residual functional capacity (RFC). Specifically, he contends that the ALJ failed to properly consider substance abuse pursuant to 20 C.F.R. § 404.1535 and *Brueggemann v. Barnhart*, 348. F.3d 689 (8th Cir. 2003). Third, Weiss argues that the ALJ failed to properly weigh opinion evidence from the

treating physician Dr. Canale, the consulting physician Dr. Lipsitz, and Weiss himself when determining his RFC. Finally, Weiss argues that the ALJ failed to list to requirements of past relevant worked or obtain a vocational expert.

Because I find that the ALJ failed to give proper weight to the opinion of Dr. Canale when determining Weiss's RFC, constituting error that warrants reversal and remand, I will not address Weiss's arguments that the ALJ failed to give proper weight to the opinion of Dr. Lipsitz or the opinion of Weiss himself, or that the ALJ failed to consider the requirements of past relevant work.

1.      Accurate Copy of Transcript

Weiss argues that since the record contained an inaccurate transcript of the ALJ hearing that the decision must be remanded. However, the defendant has subsequently corrected this error by supplementing the record with an accurate copy of the transcript. Since this error had no effect on the decision of the ALJ and has been remedied , there is no basis for remand on this issue.

2.      Consideration of substance abuse pursuant to 20 C.F.R. § 404.1525 and Bruggemann v. Barnhart, 348 F.3d 689.

Next, Weiss argues that the ALJ violated 20 C.F.R. § 404.1535 and Eighth Circuit precedent by not citing to the Social Security regulations regarding substance abuse. Weiss contends that this was an attempt by the ALJ to circumvent the substance abuse regulations.

In 1996, the Social Security Act was amended and new regulations were promulgated regarding the substance abuse of a claimant seeking disability. The new regulations state that if substance abuse is a material factor in the determination of a claimant's disability then the claimant's application for benefits  must be denied. 20 C.F.R. § 404.1535.

The regulations outline how to account for substance abuse disorders in disability determination proceedings. In those cases, "[t]he ALJ must reach [a] determination [of disability] initially ... using the standard five-step approach described in 20 C.F.R. § 404.1520 without segregating out any effects that might be due to substance abuse." *Welch v. Barnhart*, 355 F. Supp.2d 1008, 1018 (8th Cir. 2005) (quoting *Brueggemann v. Barnhart*, 348 F.3d 689, 693 (8th Cir. 2003). This requires the ALJ to make a determination of disability inclusive of all of the claimant's issues including the effects of his substance abuse, and only after a finding that the claimant is disabled may the ALJ determine whether the claimant's substance abuse was a factor material to that determination. *Id.* Therefore the ALJ's finding of disability "is, in effect, a 'condition precedent' to applying the special rule on alcoholism and drug addition." Frank S. Bloch, Block on Social Security § 3.39 (2003).

The Commissioner acknowledges that the ALJ did not cite the regulations regarding substance abuse, but contends that the ALJ's failure to cite the regulations does not require remand because the ALJ assessed Weiss's claim consistently with the substance abuse regulations, and therefore the failure to mention the regulations had no affect on the outcome of the decision. *Hepp v. Astrue,* 511 F.3d 798, 806 (8th Cir. 2008).

I agree that the ALJ's decision is consistent with the substance abuse regulations, and therefore this issue does not require remand. The ALJ's statements in his decision follow the requirements of the above cited regulations. The ALJ considered Weiss's disability inclusive of the effects of his substance abuse, and made the determination that Weiss was not disabled. The ALJ claims he only would have separated out the effects of the substance abuse if he had made a determination that Weiss was in fact disabled, to make a determination whether the substance

abuse was material factor to the finding of disability. The ALJ properly stated that, "if [Weiss] were disabled, [he] would also need to determine whether the claimant's substance abuse is a factor material to the determination that he is disabled. In effect, the issue would be whether the claimant has shown that he would continue to be disabled in the absence of substance abuse. However, the claimant is not disabled."

Because the ALJ followed the applicable regulations, his failure to cite the regulations had no effect on the outcome of the decision and therefore is not reason for reversal or remand.

3.    ALJ's failure to properly evaluate evidence from treating physician

Weiss further contends that the ALJ failed to give proper weight to the opinions of Drs. Canale and Lipsitz, and the subjective descriptions of Weiss himself to determine Weiss's RFC. I will only address the issue of the treating physician, Dr. Canale. Generally, the opinions of treating physicians are given controlling weight if their opinions are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). *See Ghant v. Bowen*, 930 F.2d 633, 639 (8th Cir. 1991); *See also Kelley v. Calahan,* 133 F.3d 585, 589 (8th Cir. 1998). "[T]he ALJ must defer to a treating physician's opinions about the nature and severity of a claimant's impairments, 'including symptoms, diagnosis and prognosis, what an applicant is capable of doing despite the impairment, and the resulting restrictions." *Ellis v. Barnhart,* 392 F.3d 988, 995 (8th Cir. 2005) (citing 20 C.F.R. pt. 404(a)(2)).

The ALJ and the Commissioner concluded that Dr. Canale's opinion was not entitled to controlling weight in this case because: (1) his opinion was contradicted by other evidence within the record; and (2) his opinion failed to account for Weiss's substance abuse problems.

First, the ALJ and Commissioner argue that the evidence on the record contradicts the medical opinion of Dr. Canale. The Commissioner and the ALJ call into question several so-called inconsistencies between Dr. Canale's opinion and the record. The Commissioner argues that the evidence in the record contradicts Dr. Canale's medical opinion that Weiss had marked difficulties in social functioning, could not meet competitive standards in his ability to remember work-like procedures, and would have difficulty understanding, remembering, and carrying out very short and simple instructions. The Commissioner claims that Dr. Canale's medical opinion is contradicted by Weiss's statements to Dr. Canale that he was "feeling good," "getting along better with his parents," and that he began to experience fewer auditory hallucinations. The Commissioner also found that the evidence that Weiss had joined a bowling league and began spending regular time with a friend created similar inconsistencies between the record and Dr. Canale's opinion. A review of the record as a whole shows that although Weiss made those statements and engaged in those activities, they did not create any inconsistencies with Dr. Canale's opinion.

While Dr. Canale's notes show that Weiss was feeling good and getting along better with fewer auditory hallucinations, these statements do not necessarily contradict Dr. Canale's opinion that Weiss had marked limitations. *See Pate-Fires v. Astrue,* 564 F.3d 935, 943 (8th Cir. 2009) (indicating that a treating physician's notes that a mental disorder is in remission with medication and management therapy does not indicate that the claimant was stable enough to return to work). *See also Hutsell v. Massanri,* 259 F.3d 707, 712 (8th Cir. 2001) (where an ALJ "relied too heavily on indications in the medical record that [the claimant] was 'doing well,' because doing well for the purposes of a treatment program has no necessary relation to a claimant's

ability to work or to her work-related functional capacity"). Weiss's statements that he was improving and his symptoms lessening only indicated that the treatment was having a positive affect, it does not, however contradict Dr. Canale's determination that despite improvement Weiss still had marked limitations in social functioning and would not be able to return to work.

The evidence that Weiss had joined a bowling league and was spending more time socializing with friends and family is not sufficient to overcome Dr. Canale's medical opinion and the rest of the record. An individual who suffers from a psychotic disorder, such as schizoaffective disorder, that manifests itself during stressful situations and interactions is often "much more impaired for work than their signs and symptoms would indicate." 20 C.F.R. Pt. 404, Subpt. P., App. 1 § 12.00(e). These activities show that Weiss was becoming better adjusted to his illness, but they do not demonstrate any inconsistencies with Dr. Canale's opinion that Weiss still has marked limitations and is unable to work. Weiss engaging in activities he enjoys in low stress situations is not enough evidence to find that Dr. Canale's medical opinion was inconsistent with the record.

The ALJ also refused to give controlling weight to Dr. Canale's opinion because Dr. Canale's opinion did not address the harm that the substance abuse caused to Weiss's treatment.

If the ALJ determines not to give controlling weight to the treating physician's opinions he must look to the factors listed in 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), to determine what weight to give to the physician's opinions and give good reasons for according the weight given. The ALJ has failed to do so here. The record shows that Dr. Canale's opinion is supported by medically acceptable data, and neither the ALJ nor the Commissioner have given a good reason to grant his opinion little to no weight. A review of the factors listed in 20 C.F.R. §

404.1527(d)(2) weigh heavily in favor of giving controlling or significant weight to Dr. Canale's opinion. Dr. Canale had been Weiss's treating physician for over three years at the time of the ALJ hearing, and the nature and extent of the treatment he provided Weiss is extensive. The record demonstrates the two had regular meetings over the course of Weiss's treatment.

Because the ALJ gave little to no weight to Dr. Canale's medical opinion and provided no valid reason to disregard that opinion, the ALJ erred by failing to properly incorporate that opinion into his assessment of Weiss's RFC. Thus, the ALJ's conclusory determination that Weiss is able to return to past relevant work was not based on substantial evidence. Upon remand, the ALJ must either give Dr. Canale's opinion controlling or substantial weight in assessing Weiss's residual functional capacity or provide an acceptable reason listed in 20 C.F.R. § 404.1527 as to why Dr. Canale's opinion deserves slight weight.

Because I am remanding the case for this reason, I need not address Weiss's other arguments. I leave to the ALJ wether he should consider arguments for remand.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is reversed and remanded to the Commissioner under sentence four of 42 U.S.C. S 405(g) for further development of the record.

A separate judgment is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 7th day of September, 2010.

16